336

Argued and submitted June 13, reversed and remanded on appeal; affirmed on cross-appeal November 16, 1994

STATE OF OREGON ex rel
Dave FROHNMAYER,
Attorney General of Oregon,
*Respondent - Cross-Appellant,*

*v.*

Herbert S. FREEMAN, D.C.,
Michael D. Freeman, D.C.,
dba Keizer Chiropractic Clinic,
*Appellants - Cross-Respondents.*

(91C-10151; CA A79219 (Control))

STATE OF OREGON ex rel
Dave FROHNMAYER,
Attorney General of Oregon,
*Respondent - Cross-Appellant,*

*v.*

Mark B. THOMAS, D.C.,
dba Thomas Chiropractic Clinic,
*Appellant - Cross-Respondent.*

(91C-10837; CA A79220)

STATE OF OREGON ex rel
Dave FROHNMAYER,
Attorney General of Oregon,
*Respondent - Cross-Appellant,*

*v.*

Del SCHAEFFER, D.C.,
dba West Albany Chiropractic Clinic,
*Appellant - Cross-Respondent.*

(92C-10406; CA A79221)

884 P2d 878

Jacob Tanzer argued the cause for appellants - cross-respondents. With him on the briefs were Bruce W. DeKock and Ball, Janik & Novack.

Harrison Latto argued the cause for respondent - cross-appellant. With him on the opening brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Jas. Adams, Assistant Attorney General. On the

reply brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Jas. Adams, Assistant Attorney General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

## RIGGS, J.

Defendants, who are chiropractic practitioners, appeal from the judgments assessing civil penalties and attorney fees against them and granting the plaintiff state injunctive relief in this action under the Unlawful Trade Practices Act (UTPA). ORS 646.605 *et seq.* Plaintiff cross-appeals from the trial court's denial of certain investigative costs. We reverse on the appeal and affirm on the cross-appeal.

The operative allegations of plaintiff's second amended complaint are:

"4.

"Defendants provide chiropractic care to patients. As part of chiropractic care, defendants regularly use a device commonly known as a Toftness Radiation Detector, also known as [a] Freeman Device or Radionics Detector, described as an instrument with plastic lenses, or rectangular object with concave plastic in the center, hereinafter referred to as a TRD. The chiropractor rubs the TRD as the other hand palpates the patient's body.

"5.

"The TRD purportedly detects electromagnetic radiation from the human body and focuses that radiation or assists a chiropractor in detecting conditions which require chiropractic treatment.

"6.

"The TRD in fact does not work and is worthless as a means of detecting injuries to the human body.

"7.

"During calendar year 1990, and continuing up to the present time, defendants knowingly, intentionally and willfully violated Oregon's Unlawful Trade Practices Act by regularly using the TRD in the following particulars:

"A)    Engaging in unconscionable tactics in the course of chiropractic medicine by representing to patients that a TRD or a Toftness-like device used has value in making diagnostic determinations when the TRD has no material benefit in performing subsequent chiropractic treatment based on the alleged information derived from the TRD (ORS 646.607(1));

"B)    Representing to chiropractic patients that the TRD or Toftness-like device is an appropriate and legitimate part of chiropractic care and performing chiropractic treatment

relying on alleged diagnosis based on the TRD (ORS 646.607(2));

"C) Inducing chiropractic patients to believe that the TRD or Toftness-like device detects injuries and 'hot spots' of which the patient was not aware, thus causing the patient to seek additional chiropractic treatment based on the diagnosis derived from the TRD or Toftness-like device and to believe that the chiropractic treatments received were beneficial (ORS 646.608(1)(e))."[1]

The parties agree that the TRD itself is a worthless device that has been proscribed by regulatory authorities and, apparently, repudiated by the chiropractic profession. Some of defendants used the TRD procedure in the past, but none has used it during the times material to this case. However, defendants do use rubbing plates which, according to plaintiff, are similar to, if not clones of, the TRD. Defendants take the opposite view. They maintain that the rubbing plates are not the same as or like the TRD, and that their use has been found by the state Board of Chiropractic Examiners (OBCE) not to be "experimental." Although the parties disagree about what, exactly, that means, evidence was presented to permit the inference that it is a form of approval. *See* OAR 811-15-070.

Defendants interposed a number of affirmative defenses. The first alleges:

---

[1] ORS 646.607(1) and (2) make it an unlawful practice if, in the course of conducting a business or occupation, a person:

"(1) Employs any unconscionable tactic in connection with sale, rental or other disposition of real estate, goods or services, or collection or enforcement of an obligation; or

"(2) Fails to deliver all or any portion of real estate, goods or services as promised, and upon request of the customer, fails to refund any money which has been received from the customer which was for the purchase of the undelivered real estate, goods or services and which is not retained by the seller pursuant to any right, claim or defense asserted in good faith. This subsection does not create a warranty obligation and shall not apply to a dispute over the quality of real estate, goods or services delivered to a customer."

ORS 646.608(1)(e) makes it unlawful if a person:

"Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have."

All statutory references in this opinion are to the statutes in effect at the time of the relevant events.

"In the course of providing chiropractic care and treatment, defendants exclusively utilize procedures and instrumentalities which are accepted by the chiropractic community and by the Oregon Board of Chiropractic Examiners. In the course of providing chiropractic care and treatment, defendant utilizes no instrumentalities which are equivalent to the Toftness Radiation Detector, and utilizes no procedures or instrumentalities deemed experimental by the Oregon Board of Chiropractic Examiners."

The second states:

"All of the procedures and instrumentalities employed by defendants in the course of providing chiropractic care and treatment are appropriate and proper in the professional judgment of defendants, are applied in the professional discretion of the defendants, and patients voluntarily seek defendants' chiropractic care and treatment with the expectation that defendant will exercise his professional judgment and discretion."[2]

On plaintiff's motion, those defenses were stricken for failure to state a defense. The case was then tried to the court, which found that defendants had wilfully violated the UTPA in the particulars alleged, and granted plaintiff the relief we have described.

■ Because defendants' third and fourth assignments would be conclusively dispositive of the case, if they were correct, we turn to them first. Defendants contend in those assignments that the court erred in its findings, particularly the finding of wilfulness, and that there was no evidence to support the findings. There are a number of problems with defendants' argument. First, they assume that, because injunctive relief was among the remedies sought, our review is *de novo*. However, monetary relief was also sought and afforded. The Supreme Court and we have uniformly held that UTPA actions are reviewable as actions at law. *See, e.g., Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or 85, 566 P2d 1177 (1977).

The standard of review may be academic, because defendants' arguments turn specifically on an asserted

---

[2] The changes from plural to singular in both affirmative defenses are accurate reproductions of the originals. However, we understand their intent to be to refer to all of the defendants throughout.

absence of evidence rather than on the weight of the evidence. Assuming that that contention has been sufficiently preserved, *see Falk v. Amsberry*, 290 Or 839, 626 P2d 362 (1981), we conclude that there was evidence from which the fact-finder could find the necessary mental state and all of the other requisite facts adversely to defendants.

In their first and second assignments, defendants assert that the court erred by striking the first and second affirmative defenses, respectively. We agree with defendants as to the first defense. Arguably, much of the matter in that defense could have been presented through denials of plaintiff's allegations. To whatever extent the first defense contains matter that does not require an affirmative pleading, we do not choose to resolve the assignment on that ground. Plaintiff's motion below and its argument here focus on the theme that the substance of the defense is legally wrong, not that the pleading of it is deficient. *See Hendgen v. Forest Grove Community Hospital*, 98 Or App 675, 780 P2d 779 (1989).

The defense contains two prongs that are interrelated: Defendants allege not only that they are using devices and procedures that have received regulatory approval and acceptance among practitioners, but also that they do not use the device that has been the object of regulatory condemnation and that plaintiff specifically alleges that defendants do use.

Plaintiff makes a variety of arguments in defense of the rulings. Although not characterized as such by plaintiff, many of its points are concerned with the weight of the evidence. However, as plaintiff successfully maintained in answer to the third and fourth assignments, our review is not *de novo*. Plaintiff contends further that defendants were allowed to and did present all of the evidence that they would have been able to present in support of the two defenses, had they not been stricken. However, facilitating the presentation of evidence is not the sole or even primary purpose of an affirmative defense. Rather, its objective is to provide a legal or factual basis for a finding in the defendant's favor. Whatever the trial court's purpose in receiving and considering the evidence may have been, it could not have been to find in defendants' favor on the theory asserted in the defenses that the court struck.

■ Plaintiff also argues that defendants "failed to prove that OBCE's action immunized them from UTPA liability." The argument is quizzical, at first blush, because it seems axiomatic that a defendant *cannot* prove a stricken defense. If plaintiff's point is that OBCE's *action, per se*, cannot *immunize* defendants from UTPA liability as a matter of law, we agree. *See Hinds v. Paul's Auto Werkstatt, Inc.*, 107 Or App 63, 810 P2d 874, *rev den* 311 Or 643 (1991); *Investigators, Inc. v. Harvey*, 53 Or App 586, 633 P2d 6 (1981). To the extent that defendants contend otherwise, they are mistaken.

However, we do not understand the first affirmative defense to be asserted *only* for that broad contention. As noted earlier, the defense has the twofold purpose of alleging that defendants are not using the procedure that plaintiff alleges they use, and that the procedure defendants do use has received regulatory and professional approval. To be viable, the defense need not be sufficient to establish that OBCE's action can or has immunized defendants from *any possible* exposure to UTPA liability—a proposition that we effectively rejected in *Investigators, Inc. v. Harvey, supra*; it need only be capable of supporting a showing that defendants are not liable under the facts alleged in *this* complaint. Plaintiff's case depended on its showing that the procedure defendants used was not meaningfully distinguishable from and shared the faults of the proscribed TRD procedure. The defense, if proved to a factfinder's satisfaction, would tend to negate that showing.

For similar reasons, plaintiff's reliance on *Investigators, Inc. v. Harvey, supra*, and *Hinds v. Paul's Auto Werkstatt, Inc., supra*, does not assist it. In *Investigator's Inc.*, we concluded that the fact that the defendant dentist was subject to professional regulation by a state agency did not render his conduct impervious to redress under the UTPA, and we held that he could be liable under the statute for falsely representing that a dental bridge he placed in a patient's mouth would remain permanently lodged. In *Hinds*, we concluded that, short of the point that a regulatory body's rules *required* a party to act inconsistently with the UTPA, the exemption in ORS 646.612(1) for "[c]onduct in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency" did not apply.

Neither case stands for the proposition that *nothing* that a regulatory body does can have bearing on UTPA liability. This case differs from *Investigators, Inc.* and *Hinds* in a critical respect: In those cases, the alleged conduct was in clear violation of the UTPA, and the issue was whether the mere fact of the agency involvement or the nature of the agency regulation made the UTPA inapplicable; here, conversely, the issue under defendants' theory is whether merely performing the very act that the agency has approved as a part of chiropractic practice constitutes an unlawful trade practice.

■      The different questions in the cases are particularly important in determining whether the allegedly violative conduct was wilful. In *Investigators, Inc.*, the alleged violation of the UTPA was misrepresenting the quality and craftsmanship of a specific piece of bridge work. The allegation was not that simply performing or extolling the virtues of bridge work procedures as a generic dental technique was in violation of the statute. In this case, the allegations are analogous to that one that was not made in *Investigators, Inc.* There is no contention that defendants have conducted the procedure improperly or are making any false representations that are truly separable from the act of conducting the procedure. The essence of plaintiff's position is that the procedure defendants use is itself a fraud, and the essence of the first affirmative defense, expressly or inferentially, is that defendants believed and the OBCE has said that the procedure defendants use is an acceptable chiropractic methodology. We conclude that the defense presented mental state and other questions that defendants were entitled to present, and that were not and could not have been effectively presented in accordance with defendants' theory of the case in the absence of the defense. The striking of the defense was reversible error.

■      The striking of the second affirmative defense presents a more problematical question. The defense contains two distinct components: The first relates to defendants' own beliefs as to the appropriateness of the procedure, and the second attaches seemingly conclusive significance to professional discretion and relationships. The first component is quite relevant to mental state and is an appropriate matter of

defense; however, it is also a matter that very clearly can be raised through a denial. The second component rests in the main on defendants' efforts to analogize this case to professional malpractice cases that have enunciated the principle that practitioners cannot be held liable if they skillfully apply the teachings and standards of their particular professional discipline. That argument presupposes the existence of the same wall of separation between the UTPA and the professions that we held did not exist in *Investigators, Inc. v. Harvey, supra*. The UTPA is applicable to health professionals who commit the unlawful practices it prohibits in the course of providing professional services, and the statutory criteria rather than the professional standards of care are applicable to UTPA actions.

■ The net effect is somewhat anomalous. One part of the second defense presents viable defensive matter that did not have to be affirmatively pleaded, and the other part presents matter that may not be covered by a denial but that, as pleaded and as supported in defendants' argument here, is not a defense. Although, for the reasons stated in our discussion of the first assignment, we do not decide this case on the basis of pleading defects, the problem with the second defense goes beyond that: the part of it that *could* serve as an affirmative defense is legally incorrect. Consequently, it was not error for the trial court to strike the second defense. Because we reverse on another basis, however, we note for purposes of the proceedings on remand that evidence of defendants' beliefs in the appropriateness of the procedure is relevant to whether they acted with the alleged improper mental state.

Our disposition of the first assignment makes it unnecessary for us to reach defendants' remaining assignments that we have not addressed. That disposition also defeats plaintiff's cross-appeal. Plaintiff has not prevailed, and is not now entitled to investigative costs. ORS 646.632(8).

Reversed and remanded on appeal; affirmed on cross-appeal.